1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jesse Evans-Schroeder (Arizona State Bar #027434)
GREEN EVANS-SCHROEDER, PLLC
130 W. Cushing Street
Tucson, Arizona 85701
Ph: (520) 882-8852
Fax: (520) 882-8843
Jesse@arizonaimmigration.net

*Attorney for Petitioner-Plaintiff*
Garbis Krajekian

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garbis Krajekian,<br><br>          Petitioner-Plaintiff,<br><br>          v.<br><br>John CANTU, Field Office Director of Phoenix Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Todd LYONS Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Kristi NOEM, in her Official Capacity, Secretary, U.S. Department of Homeland Security;<br><br>Pam BONDI, in her Official Capacity, Attorney General of the United States;<br><br>Fred FIGUEROA, Warden at Eloy Detention Center, Eloy, Arizona<br><br>          Respondents-Defendants. | Case No. TBD<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><u>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief</u> |

**INTRODUCTION**

1.   Petitioner, Garbis KRAJEKIAN ("Mr. Krajekian" or "Petitioner"), by and through his undersigned counsel, hereby files this petition for writ of habeas corpus and complaint for declaratory and injunctive relief[1] to compel his immediate release from the immigration detention where he has been held by the U.S. Department of Homeland Security ("DHS") since being unlawfully re-detained on April 6, 2025, without at any point having been provided a due process hearing to determine whether his detention is justified. As a Syrian who has lived in the United States since 1994, and who has been reporting to ICE on a regular basis since his release from detention over seven (7) years ago, his re-detention by ICE must be held unlawful as it is limitless in duration. Thus, Mr. Krajekian's detention is both unconstitutional because it is indefinite, and illegal because he was not provided with any pre-deprivation hearing and before his recent detention by ICE.

2.   Mr. Krajekian has also never been ordered removed to any third country or notified of such potential removal. Given the Supreme Court of the United States' decision on June 23, 2025, in *U.S. Department of Homeland Security, et al. v. D.V.D., et al.*, No. 24A1153, 2025 WL 1732103 (June 23, 2025), which stayed the nationwide injunction that had precluded Respondents from removing noncitizens to third countries without notice and an opportunity to seek fear-based relief, U.S. Immigration and Customs Enforcement ("ICE") appears emboldened and intent to implement its campaign to send noncitizens to far corners of the planet—places they have absolutely no connection to whatsoever[2]—in violation of clear statutory obligations set forth in the Immigration and Nationality Act ("INA"), binding treaty, and due process. In the

---

[1] Petitioner Mr. Krajekian files this first amended petition as a matter of course pursuant to Fed. R. Civ. Pro. 15(a), as 21 days have not yet passed since service of the original petition. 28 U.S.C. § 2242 (a petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); Fed. R. Civ. Pro. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course no later than…21 days after serving it.").

[2] CBS News, "Politics Supreme Court lets Trump administration resume deportations to third countries without notice for now" (June 24, 2025), available at: https://www.cbsnews.com/news/supreme-court-lifts-lower-court-order-blocking-deportations-to-third-countries-without-notice/.

absence of the nation-wide injunction, individual lawsuits like the instant case are the only method to challenge the illegal third-country removals.

3.  Mr. Krajekian first entered the United States in 1994 around the age of nineteen, on an F1 student visa from Syria. He later became a U.S. lawful permanent resident.

4.  Mr. Krajekian was released on supervised probation from incarceration in or around September of 2017. After his release, he was detained by U.S. Immigration and Customs Enforcement ("ICE") and underwent removal proceedings before the Immigration Court while detained. Mr. Krajekian attended only one hearing before an Immigration Judge at which he accepted a removal order. At that time, he could not be repatriated to Syria due to the suspension of diplomatic relations between the U.S. and Syria from 2012 to the present.[3] Thus, his primary goal was not to remain detained while fighting his case before the Immigration Court, but rather to be released as quickly as possible after having been incarcerated for over three years. Mr. Krajekian was released from ICE detention after approximately three months.

5.  Mr. Krajekian was thereafter released from ICE custody in late December 2017, and placed on a Form I-220B, Order of Supervision ("OSUP"), which permitted him to remain free from custody following his removal proceedings because his removal is not reasonably foreseeable and he is otherwise neither a flight risk nor a danger to the community. The OSUP also required him to attend regular check in appointments at the ICE Phoenix office and permitted him to apply for work authorization. 8 C.F.R. § 241.5. For the past seven-and-a-half years, Mr. Krajekian has complied with the terms of his OSUP, attending all scheduled appointments, which were scheduled at three-month, six-month, and sometimes over year-long intervals.

6.  On January 3, 2025, Mr. Krajekian attended his regularly scheduled check in appointment at the ICE Phoenix office. At that appointment, Mr. Krajekian was ordered to return for another check in on July 10, 2025. However, on April 6, 2025, without advance notice or

---

[3] The U.S. Department of State updated the Syria Travel Advisory on March 3, 2025, noting "[t]he U.S. government suspended operations in 2012…Do not travel to Syria for any reason." U.S. Department of State, Syria Travel Advisory (March 3, 2025), available at: https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/syria-travel-advisory.html .

Petition for Writ of Habeas Corpus          2
Case No. TBD

cause, or the opportunity for a due process hearing, ICE took Mr. Krajekian into custody in or near his home in Phoenix, Arizona. No explanation was given to Mr. Krajekian for his detention. There is no evidence of any other change relevant to his detention status, removability, or criminal record. On information and belief, his Form I-220B OSUP has never been revoked, withdrawn, or otherwise cancelled.

7. Since his release from incarceration and then ICE custody in late 2017, ICE did not seek to re-detain Mr. Krajekian. Instead, for the past seven-and-a-half years, Mr. Krajekian has been attending his routine check-in appointments as required and working with his wife to maintain a landscaping business and raise their children.

8. By statute and regulation, ICE has the authority to re-detain a noncitizen previously ordered removed only in specific circumstances, including where an individual violates any condition of release or the individual's conduct demonstrates that release is no longer appropriate. 8 U.S.C. § 1231; 8 C.F.R. § 241.4(l)(1)-(2). That authority, however, is proscribed by the Due Process Clause because it is well-established that individuals released from incarceration have a liberty interest in their freedom. In turn, to protect that interest, on the particular facts of Mr. Krajekian's case, due process required notice and a hearing, *prior to any re-arrest*, at which he was afforded the opportunity to advance his arguments as to why he should not be re-detained.

9. Here, Respondents created a reasonable expectation that Mr. Krajekian would be permitted to live and work in the United States without being subject to arbitrary arrest and removal.

10. This reasonable expectation creates constitutionally protected liberty and property interests. *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest); *see also Texas v. United States*, 809 F.3d 134, 174 (2015), affirmed by an equally divided court, 136 S. Ct. 2271 (2016) (explaining that "DACA involve[s] issuing benefits" to certain applicants). These benefits are entitled to constitutional protections no matter how they may be characterized by Respondents. *See, e.g., Newman v. Sathyavaglswaran*, 287 F.3d 786, 797 (9th Cir. 2002)

("[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state or other independent source.") (internal quotations omitted).

11. Further, the Supreme Court has limited the potentially indefinite post-removal order detention to a maximum of six months, because removal is not reasonably foreseeable. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Because the United States and Syria do not maintain formal diplomatic relations, removal is not reasonably foreseeable. The government has not provided him with notice, evidence, or an opportunity to be heard on this issue either before arbitrarily re-detaining him. His continued detention without any reasonably foreseeable end point is thus unconstitutionally prolonged in violation of clear Supreme Court precedent.

12. The basic principle that individuals placed at liberty are entitled to process before the government imprisons them has particular force here, where Mr. Krajekian was *already* previously released from ICE detention over seven years ago, after which he began to rebuild his life, including by securing employment. Under these circumstances, DHS was required to afford him the opportunity to advance arguments in favor of his freedom before it robbed him of his liberty. He must therefore be released from custody and should not be re-detained unless and until DHS proves to an Immigration Judge that given his detention has the potential to be unconstitutionally indefinite, his removal to Syria is reasonably foreseeable. Several federal district courts have already ordered similar relief. *See Quoc Chi Hoac v. Becerra*, 2025 U.S. Dist. LEXIS 136002, 2025 LX 206685 (E.D. Cal. July 16, 2025); *Phong Phan v. Beccerra*, No. 2:25-CV-01757-DC-JDP, 2025 U.S. Dist. LEXIS 136000 (E.D. Cal. July 16, 2025); *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 U.S. Dist. LEXIS 133521 (E.D. Cal. July 14, 2025); *Karem Tadros v. Noem*, No. 25cv4108 (EP), 2025 U.S. Dist. LEXIS 113198 (D.N.J. June 13, 2025). During any custody redetermination hearing that occurs, the Immigration Judge must further consider whether, in lieu of detention, alternatives to detention exist to mitigate any risk that DHS may establish.

13. Moreover, under the INA, Respondents have a statutory obligation to remove Mr. Krajekian *only* to the designated country—in this case, Syria. 8 U.S.C. § 1231(b)(2)(A)(ii). If

Mr. Krajekian is to be removed to a third country, Respondents *must* first assert a basis under 8 U.S.C. § 1231(b)(2)(C) and ICE *must* provide him with sufficient notice and an opportunity to respond and apply for fear-based relief as to that country, in compliance with the INA, due process, and the binding international treaty: The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.[4] Currently, DHS has a policy of removing or seeking to remove individuals to third countries without first providing constitutionally adequate notice of third country removal, or any meaningful opportunity to contest that removal if the individual has a fear of persecution or torture in that country.[5] The U.S. District Court for the District of Massachusetts previously issued a nationwide preliminary injunction blocking such third country removals without notice and a meaningful opportunity to apply for relief under the Convention Against Torture, in recognition that the government's policy violates due process and the United States' obligations under the Convention Against Torture. *D.V.D., et al.* v. *U.S. Department of Homeland Security, et al. v.*, No. 25-10676-BEM (D. Mass. Apr. 18, 2025). The U.S. Supreme Court has since granted the government's motion to stay the injunction on June 23, 2025, just before the Court published *Trump v. Casa*, No. 24A884 (June 27, 2025) limiting nationwide injunctions. Thus, the Supreme Court's order, which is not accompanied by an opinion, signals only disagreement with the nature, and not the substance, of the nationwide preliminary injunction. Thus, in this individual habeas petition, Mr. Krajekian submits that he cannot be removed to any third country unless he is first provided with adequate notice and a meaningful opportunity to apply for protection under the Convention Against Torture. District courts have recently ordered similar relief. *See Quoc Chi Hoac v. Becerra*, 2025 U.S. Dist. LEXIS 136002, 2025 LX 206685 (E.D. Cal. July 16, 2025); *Phong Phan v. Beccerra*, No. 2:25-CV-01757-DC-JDP, 2025 U.S. Dist. LEXIS 136000 (E.D. Cal. July 16, 2025); *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGRx, 2025 U.S. Dist. LEXIS 133909 (C.D. Cal. July 14, 2025); J.R.

---

[4] United Nations, Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Dec. 10, 1984), available at: https://www.ohchr.org/en/instruments-mechanisms/instruments/convention-against-torture-and-other-cruel-inhuman-or-degrading.

[5] Catholic Legal Immigration Network, "Updates on Third Country Removals and the D.V.D. Litigation," June 26, 2025, available at: https://www.cliniclegal.org/resources/removal-proceedings/updates-third-country-removals-and-dvd-litigation.

Petition for Writ of Habeas Corpus                    5
Case No. TBD

*v. Bostoc*k, No. 2:25-cv-01161-JNW, 2025 U.S. Dist. LEXIS 124229 (W.D. Wash. June 30, 2025).

## CUSTODY

14. Petitioner is detained by DHS at the CoreCivic Eloy Detention Center, where he was transferred after being arrested by ICE officers at or near his home in Phoenix, Arizona, within the jurisdiction of this Court. Prior to and since being arrested by ICE in Phoenix, Petitioner has not been provided with a constitutionally compliant hearing to assess whether his re-detention is warranted.

## JURISDICTION

15. This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, general federal question jurisdiction; 5 U.S.C. § 701 *et seq.*, All Writs Act; 28 U.S.C. § 2241 *et seq.*, habeas corpus; 28 U.S.C. § 2201, the Declaratory Judgment Act; Art. 1, § 9, Cl. 2 of the United States Constitution (Suspension Clause); Art. 3 of the United States Constitution, and the common law, as Petitioner is detained under color of the authority of the United States, and such custody is in violation of the Constitution, laws, regulations, and, or treaties of the United States.

16. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651 to protect Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, the Excessive Bail Clause of the Eighth Amendment, and under applicable Federal law, and to issue a writ of habeas corpus for his immediate release. *See generally INS v. St. Cyr*, 533 U.S. 289 (2001); *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## REQUIREMENTS OF 28 U.S.C. § 2243

17. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

18. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

19. Habeas corpus must remain a swift remedy. Importantly, "the statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit warned against any action creating the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id.*

<u>**VENUE**</u>

20. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(e) because the Respondents are employees or officers of the United States, acting in their official capacity; because a substantial part of the events or omissions giving rise to the claim occurred in the District of Arizona; because Petitioner is currently detained in the District of Arizona; and because there is no real property involved in this action.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

21. For habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez*, 872 F.3d at 988. A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (*quoting Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)). Petitioner asserts that exhaustion is satisfied as there is no administrative jurisdiction over this detention status because he already has a final order of removal.

22. No statutory exhaustion requirements apply to Petitioner's claim of unlawful custody in violation of his due process rights, and there are no administrative remedies that he needs to

exhaust. *See Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *In re Indefinite Det. Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000) (same).

## PARTIES

23. Petitioner Garbis KRAJEKIAN was born in Syria and arrived in the United States as a student visa holder in 1994. He subsequently became a U.S. lawful permanent resident. He previously served approximately 41 months of incarceration in federal prison, and several months in ICE detention, after which he was released and placed on an OSUP. He attended regular check-ins at the ICE Phoenix office for over seven years and began to rebuild his life during this time. On April 6, 2025, ICE, without prior notice or a hearing, took Petitioner into custody in or near his Phoenix-area home.

24. Respondent John CANTU is the Acting Field Office Director of ICE, in Phoenix, Arizona, and is named in his official capacity. ICE is the component of the DHS that is responsible for detaining and removing noncitizens according to immigration law and oversees custody determinations. In his official capacity, he is the legal custodian of Petitioner.

25. Respondent Todd LYONS is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. In his official capacity as head of ICE, he is the legal custodian of Petitioner.

26. Respondent Kristi NOEM is the Secretary of the DHS and is named in her official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. In her capacity as Secretary, Respondent Noem has responsibility for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a). Respondent Noem is the ultimate legal custodian of Petitioner.

27. Respondent Pam BONDI is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ) and is named in her official capacity. She has the authority to interpret immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.

28. Respondent Fred FIGUEROA is the warden of CoreCivic's Eloy Detention Center, where Petitioner is being held. Respondent Figueroa oversees the day-to-day operations of the Eloy Detention Center and acts at the Direction of Respondents Lyons, Noem, and Cantu. He is a custodian of Petitioner and is named in his official capacity.

## STATEMENT OF FACTS

29. Mr. Krajekian first entered the United States in 1994 at the age of approximately nineteen as a student visa holder from Syria. He later became a U.S. lawful permanent resident.

30. Mr. Krajekian was released from incarceration in 2017, after serving approximately 41 months in federal prison for convictions he sustained in 2015. After his release, he was detained by ICE and underwent removal proceedings while detained. At that time, Syrian individuals like Mr. Krajekian could not be removed due to the suspension of diplomatic relations between the U.S. and Syria.[6] He requested removal to Switzerland but was ordered removed to Switzerland or Syria by the Immigration Judge on October 3, 2017, at his first hearing in removal proceedings. Exhibit ("Exh.") A (Transcript of October 3, 2017 Hearing). Petitioner feared removal to Syria and queried the immigration judge about his eligibility for protection from return to Syria. The judge vaguely indicated he would be removed to Switzerland and cut off Petitioner's inquiry as to forms of protection such as the Convention Against Torture. Id.

31. Mr. Krajekian could not be removed to Syria, and therefore his continued detention by ICE would be indefinite and unconstitutionally prolonged if he were to remain in ICE detention. Therefore, consistent with Supreme Court law, he was thereafter released from ICE custody after several months and placed on an OSUP in late 2017, requiring him to attend regular check in appointments at the ICE Phoenix office. Exh. B (Order of Supervision, dated December 29,

---

[6] *See supra*, n. 3.

2017). For the past seven-and-a-half years, Mr. Krajekian has complied with the terms of his OSUP by regularly checking in at the ICE Phoenix office on a regular basis. Id.

32. On January 3, 2025, Mr. Krajekian attended his regularly scheduled check in appointment at the ICE Phoenix office. Id. On that date, he was ordered to return for a regular check in on July 10, 2025. Id. On April 6, 2025, without notice or the opportunity for a due process hearing, ICE took Mr. Krajekian into custody outside of his home.

33. There was no explanation provided to Mr. Krajekian regarding the reason for his detention. On information and belief, his Form I-220B OSUP has never been revoked, withdrawn, or otherwise cancelled.

34. Since his release from incarceration and then ICE custody in late 2017, ICE did not seek to re-detain Mr. Krajekian. Instead, for the past seven-and-a-half years, Mr. Krajekian was attending his routine check-in appointments as required, working, and reconnecting with family—including his U.S. citizen wife and minor children--after having been incarcerated for approximately three-and-a-half years. Exh. C (Declaration of Petitioner).

35. On information and belief, on January 25, 2025, officials in the new Trump administration directed senior ICE officials to increase arrests to meet daily quotas. Specifically, each field office was instructed to make seventy-five arrests per day.[7]

36. On April 6, 2025, Mr. Krajekian was detained in or near his home, without prior notice or a hearing, and was taken into custody. Id.

37. ICE did not provide any due process to him regarding his detention status. Id.

38. On the same date, ICE transferred Mr. Krajekian to the Eloy Detention Center, located at 1705 E. Hanna Road, Eloy, Arizona, 85131. He has remained in the Eloy Detention Center since that date. Id.

39. Mr. Krajekian has agreed to provide assistance in obtaining travel documents to Syria, and has provided all assistance he is able to provide. Id.; *see also* Exh. D (Instruction Sheet to Detainee Regarding Requirement to Assist in Removal, dated May 7, 2025). No evidence has

---

[7] *See* "Trump officials issue quotas to ICE officers to ramp up arrests," *Washington Post* (Jan. 26, 2025), available at: https://www.washingtonpost.com/immigration/2025/01/26/ice-arrests-raids-trump-quota/.

been presented to Mr. Krajekian that ICE has requested travel documents to Syria. No evidence has been presented or made available to Mr. Krajekian that the government of Syria has ever indicated that it would issue such travel documents. Exh. C.

40. Mr. Krajekian has remained unlawfully detained without having been provided a due process hearing, and his prolonged and potentially indefinite detention is not constitutional, given that his removal to Syria, the only country to which he has been ordered removed, is not reasonably foreseeable.

41. Mr. Krajekian is also at risk of being unlawfully removed to a third country without constitutionally adequate notice and a meaningful opportunity to apply for protection under the Convention Against Torture, in violation of the INA, binding international treaty, and due process. Currently, DHS has a policy of removing or seeking to remove individuals to third countries *without* first providing adequate notice of third country removal, or any meaningful opportunity to contest that removal if the individual has a fear of persecution or torture in that country.[8]

42. Intervention from this Court is therefore required to ensure that Mr. Krajekian does not continue to suffer irreparable harm in the form of unjustified, prolonged, and indefinite detention, and further violation of his rights in the form of summary removal to a third country.

## LEGAL BACKGROUND

**Right to a Hearing Prior to Re-incarceration**

43. Following a final order of removal, ICE is directed by statute to detain an individual for ninety (90) days to effectuate removal. 8 U.S.C. § 1231(a)(2). This ninety (90) day period, also known as "the removal period," generally commences as soon as a removal order becomes administratively final. *Id.* at § 1231(a)(1)(A); § 1231(a)(1)(B).

44. If ICE fails to remove an individual during the ninety (90) day removal period, the law requires ICE to release the individual under conditions of supervision, including periodic reporting. 8 U.S.C. § 1231(a)(3) ("If the alien . . . is not removed within the removal period, the

---

[8] Clinic Legal, "Updates on Third Country Removals and the D.V.D. Litigation" (June 26, 2025), available at: https://www.cliniclegal.org/resources/removal-proceedings/updates-third-country-removals-and-dvd-litigation .

alien, pending removal, shall be subject to supervision."). Limited exceptions to this rule exist. Specifically, ICE "may" detain an individual beyond ninety days if the individual was ordered removed on criminal grounds or is determined to pose a danger or flight risk. 8 U.S.C. § 1231(a)(6). However, ICE's authority to detain an individual beyond the removal period under such circumstances is not boundless. Rather, it is constrained by the constitutional requirement that detention "bear a reasonable relationship to the purpose for which the individual [was] committed." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Because the principal purpose of the post-final-order detention statute is to effectuate removal, detention bears no reasonable relation to its purpose if removal cannot be effectuated. *Id.* at 697.

45. Post-final order detention is only authorized for a "period reasonably necessary to secure removal," a period that the Court determined to be presumptively six months. *Id.* at 699-701. After this six (6) month period, if a detainee provides "good reason" to believe that his or her removal is not significantly likely in the reasonably foreseeable future, "the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the government cannot do so, the individual must be released.

46. That said, detainees are entitled to release even before six months of detention if removal is not reasonably foreseeable. *See* 8 C.F.R. § 241.13(b)(1) (authorizing release after ninety days where removal not reasonably foreseeable). Moreover, as the period of post-final-order detention grows, what counts as "reasonably foreseeable" must conversely shrink. *Zadvydas* at 701.

47. Even where detention meets the *Zadvydas* standard for reasonable foreseeability, detention violates the Due Process Clause unless it is "reasonably related" to the government's purpose, which is to prevent danger or flight risk. *See Zadvydas*, 533 U.S. at 700 ("[I]f removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period") (emphasis added); *Id.* at 699 (purpose of detention is "assuring the alien's presence at the moment of removal"); *Id.* at 690-91 (discussing twin justifications of detention as preventing flight and protecting the community). Thus, Mr. Krajekian must be released from custody because he does not pose a danger or flight risk that warrants post-final-order detention,

regardless of whether his removal can be effectuated within a reasonable period. This is especially so because ICE *has already* released Mr. Krajekian from detention for a period of over seven years.

48. The government's own regulations contemplate this requirement. They dictate that even after ICE determines that removal is reasonably foreseeable—and that detention therefore does not per se exceed statutory authority—the government must still determine whether continued detention is warranted based on flight risk or danger. *See* 8 C.F.R. § 241.13(g)(2) (providing that where removal is reasonably foreseeable, "detention will continue to be governed under the established standards" in 8 C.F.R. § 241.4).

49. The regulations at 8 C.F.R. § 241.4 set forth the custody review process that existed even before *Zadvydas*. This mandated process, known as the post-order custody review, requires ICE to conduct "90-day custody reviews" prior to expiration of the ninety-day removal period and to consider release of individuals who pose no danger or flight risk. 8 C.F.R. § 241.4(e)-(f). Among the factors to be considered in these custody reviews are "ties to the United States such as the number of close relatives residing here lawfully"; whether the noncitizen "is a significant flight risk"; and "any other information that is probative of whether" the noncitizen is likely to "adjust to life in a community," "engage in future acts of violence," "engage in future criminal activity," pose a danger to themselves or others, or "violate the conditions of his or her release from immigration custody pending removal from the United States." *Id.*

50. Individuals with final orders who are released after a post-order custody review are subject to Forms I-220B, Order of Supervision. 8 C.F.R. § 241.4(j). After an individual has been released on an order of supervision, as Mr. Krajekian was, ICE cannot revoke such an order without cause or adequate legal process. 8 C.F.R. § 241.13(i)(2)-(3).

**Petitioner's Protected Liberty Interest in His Release**

51. Petitioner's liberty from immigration custody is protected by the Due Process Clause: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

52. For seven-and-a-half years preceding his re-detention on April 6, 2025, Petitioner exercised that freedom under his prior release from ICE custody in 2017. He thus retained a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding re-incarceration. *See Young v. Harper*, 520 U.S. 143, 146-47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482-483 (1972). Moreover, the Supreme Court has recognized that post-removal order detention is potentially indefinite and thus unconstitutional without some limitation. *Zadvydas*,  533 U.S. at 701.In this case, in the absence of U.S. diplomatic relations with Syria indicates that removal is not foreseeable at all, let alone reasonably. Therefore, his continued detention is unconstitutional.

53. Just as importantly, Petitioner continued presenting himself before ICE for his regular check-in appointments for over seven years, where ICE did not seek to re-arrest him during this time. ICE instead gave him a future date and time to appear again.

54. In *Morrissey*, the Supreme Court examined the "nature of the interest" that a parolee has in "his continued liberty." 408 U.S. at 481-82. The Court noted that, "subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. The Court further noted that "the parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The Court explained that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Morrissey*, 408 U.S. at 482.

55. This basic principle—that individuals have a liberty interest in their release—has been reinforced by both the Supreme Court and the circuit courts on numerous occasions. *See, e.g.*, *Young v. Harper*, 520 U.S. at 152 (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon v. Scarpelli*, 411 U.S. at 781-82 (holding that individuals released on felony probation have a protected liberty interest requiring pre-deprivation process). As the First Circuit

has explained, when analyzing the issue of whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). *See also*, *e.g.*, *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated") (citing *Young*, 520 U.S. at 152, *Gagnon*, 411 U.S. at 782, and *Morrissey*, 408 U.S. at 482).

56. In fact, it is well-established that an individual maintains a protectable liberty interest even where the individual obtains liberty through a mistake of law or fact. *See id.*; *Gonzalez-Fuentes*, 607 F.3d at 887; *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (noting that due process considerations support the notion that an inmate released on parole by mistake, because he was serving a sentence that did not carry a possibility of parole, could not be re-incarcerated because the mistaken release was not his fault, and he had appropriately adjusted to society, so it "would be inconsistent with fundamental principles of liberty and justice" to return him to prison) (internal quotation marks and citation omitted).

57. Here, when this Court "'compar[es] the specific conditional release in [Petitioner's case], with the liberty interest in parole as characterized by *Morrissey*,'" it is clear that they are strikingly similar. *See Gonzalez-Fuentes*, 607 F.3d at 887. Just as in *Morrissey*, Petitioner's release "enables him to do a wide range of things open to persons'" who have never been in custody or convicted of any crime, including to live at home, work with his community, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

58. Since his release in 2017, which came after approximately 2 years of incarceration and several months in ICE custody, Petitioner has been focused on rebuilding his life, including by reconnecting with family and securing employment.

**Petitioner's Liberty Interest Mandated a Due Process Hearing Before any Re-Detention**

59. Petitioner asserts that, here, (1) where his detention is civil, (2) where he has diligently complied with ICE's reporting requirements on a regular basis, and (3) where on information and belief ICE officers arrested Petitioner merely to fulfill an arrest quota because his removal is not reasonably foreseeable and potentially indefinite, due process mandates that he was required to receive notice and a hearing before an Immigration Judge prior to any re-detention.

60. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481-82). This Court must "balance [Petitioner's] liberty interest against the [government's] interest in the efficient administration of" its immigration laws to determine what process he is owed to ensure that ICE does not unconstitutionally deprive him of his liberty. *Id.* at 1357. Under the test set forth in *Mathews v. Eldridge*, this Court must consider three factors in conducting its balancing test: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood*, 769 F.2d at 1357 (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

61. The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Only in a "special case" where post-deprivation remedies are "the only remedies the State could be expected to provide" can post-deprivation process satisfy the requirements of due process. *Zinermon*, 494 U.S. at 985. Moreover, only where "one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue" such that "the State cannot be required constitutionally to do the impossible by providing predeprivation process," can the government avoid providing pre-deprivation process. *Id.*

62. Because, in this case, the provision of a pre-deprivation hearing was both possible and valuable to preventing an erroneous deprivation of liberty, ICE was required to provide Petitioner with notice and a hearing *prior* to any re-incarceration and revocation of his OSUP. *See Morrissey*, 408 U.S. at 481-82; *Haygood*, 769 F.2d at 1355-56; *Jones*, 393 F.3d at 932; *Zinermon*, 494 U.S. at 985; *see also Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982); *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) (holding that individuals awaiting involuntary civil commitment proceedings may not constitutionally be held in jail pending the determination as to whether they can ultimately be recommitted). Under *Mathews*, "the balance weighs heavily in favor of [Petitioner's] liberty" and required a pre-deprivation hearing before an Immigration Judge, which ICE failed to provide.

**Petitioner's Private Interest in His Liberty is Profound**

63. Under *Morrissey* and its progeny, individuals conditionally released from serving a criminal sentence have a liberty interest that is "valuable." *Morrissey*, 408 U.S. at 482. In addition, the principles espoused in *Hurd* and *Johnson*—that a person who is in fact free of physical confinement, even if that freedom is lawfully revocable, has a liberty interest that entitles him to constitutional due process before he is re-incarcerated—apply with even greater force to individuals like Petitioner, who have also been released from prior ICE custody. Parolees and probationers have a diminished liberty interest given their underlying convictions. *See, e.g.*, *U.S. v. Knights*, 534 U.S. 112, 119 (2001); *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Nonetheless, even in the criminal parolee context, the courts have held that the parolee cannot be re-arrested without a due process hearing in which they can raise any claims they may have regarding why their re-incarceration would be unlawful. *See Gonzalez-Fuentes,* 607 F.3d at 891-92; *Hurd*, 864 F.3d at 683. Thus, Petitioner retains a truly weighty liberty interest even though he was under conditional release prior to his re-arrest.

64. What is at stake in this case for Petitioner is one of the most profound individual interests recognized by our legal system: whether ICE may unilaterally nullify a prior release decision and be able to take away his physical freedom, i.e., his "constitutionally protected interest in avoiding physical restraint." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (internal quotation

omitted). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). *See also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Cooper v. Oklahoma*, 517 U.S. 348 (1996).

65. Thus, there is a profound private interest at stake in this case, which must be weighed heavily when determining what process he is owed under the Constitution. *See Mathews*, 424 U.S. at 334-35.

**The Government's Interest in Keeping Petitioner in Detention is Low and the Burden on the Government to Release Him from Custody is Minimal**

66. The government's interest in keeping Petitioner in detention without a due process hearing is low, and when weighed against Petitioner's significant private interest in his liberty, the scale tips sharply in favor of releasing Petitioner from custody unless and until the government demonstrates that he is a flight risk or danger to the community. It becomes abundantly clear that the *Mathews* test favors Petitioner when the Court considers that the process Petitioner seeks—release from custody after ICE *already* released Mr. Krajekian from detention after several months, all of which occurred *over seven years ago* and where nothing in the interim has changed to warrant re-detention after —is a standard course of action for the government. In the alternative, providing Petitioner with a hearing before an Immigration Judge to determine whether there is evidence that Petitioner is a flight risk or danger to the community would impose only a *de minimis* burden on the government, because the government routinely conducts these reviews for individuals in Petitioner's same circumstances. 8 C.F.R. § 241.4(e)-(f).

67. As immigration detention is civil, it can have no punitive purpose. The government's only interest in holding an individual in immigration detention can be to prevent danger to the community or to ensure a noncitizen's appearance at immigration proceedings. *See Zadvydas*, 533 U.S. at 690. Moreover, the Supreme Court has made clear that indefinite detention of noncitizens who cannot be removed to the country of the removal order is unconstitutional. In

1    this case, the government cannot plausibly assert that it had a sudden interest in detaining

2    Petitioner due to alleged dangerousness, or due to a change in the foreseeability of his removal to

3    Syria, as his circumstances have not changed since his release from ICE custody in 2017.

4        68. Petitioner has continued to appear before ICE on a regular basis for every appointment

5    that has been scheduled. *See Morrissey*, 408 U.S. at 482 ("'It is not sophistic to attach greater

6    importance to a person's justifiable reliance in maintaining his conditional freedom so long as he

7    abides by the conditions on his release, than to his mere anticipation or hope of freedom'")

8    (quoting *United States ex rel. Bey v. Connecticut Board of Parole*, 443 F.3d 1079, 1086 (2d Cir.

9    1971).

10       69. As to flight risk, Petitioner's post-release conduct in the form of full compliance with his

11   check-in requirements further confirms that he is not a flight risk and that he is likely to present

12   himself at any future ICE appearances, as he always has done. The government's interest in

13   detaining Petitioner at this time is therefore low. That ICE has a new policy to make a minimum

14   number of arrests each day under the new administration does not constitute a material change in

15   circumstances or increase the government's interest in detaining him.[9] Moreover, nothing has

16   changed regarding the lack of foreseeability of his removal to Syria.

17       70. Release from custody until ICE assesses and demonstrates that Petitioner is a flight risk

18   or danger to the community, or that his detention is not going to be indefinite, is far *less* costly

19   and burdensome for the government than keeping him detained. As the Ninth Circuit noted in

20   2017, which remains true today, "[t]he costs to the public of immigration detention are

21   'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million."

22   *Hernandez*, 872 F.3d at 996. If, in the alternative, the Court chooses to order a hearing for

23   Petitioner at which the government bears the burden of justifying his continued detention, the

24   government would bear no additional cost if the hearing is scheduled within seven days, rather

25   than allowing Petitioner to sit in detention for days or weeks awaiting a hearing.

26
27   **Without Release from Custody until the Government Provides a Due Process Hearing, the Risk of an Erroneous Deprivation of Liberty is High**

28

---

[9] *Supra,* n. 7.

71. Releasing Petitioner from custody until he is provided with a pre-deprivation hearing would decrease the risk of him being erroneously deprived of his liberty. Before Petitioner can be lawfully detained, he must be provided with a hearing before an Immigration Judge at which the government is held to show that his detention will not be indefinite, or that the circumstances have changed since his release in 2017 such that evidence exists to establish that Petitioner is a danger to the community or a flight risk.

72. Under the process that ICE maintains is lawful—which affords Petitioner no process whatsoever—ICE can simply re-detain him at any point if the agency desires to do so, as ICE did on April 6, 2025. Petitioner has already been erroneously deprived of his liberty when he was detained at or near his home, and the risk he will continue to be deprived is high if ICE is permitted to keep him in detention after making a unilateral decision to re-detain him. Pursuant to 8 C.F.R. § 241.4(l), revocation of release on an OSUP is at the discretion of the Executive Associate Commissioner. Thus, the regulations permit ICE to unilaterally re-detain individuals, even for an oversight of any kind. After re-arrest, ICE makes its own, one-sided custody determination and can decide whether the agency wants to hold Petitioner. 8 C.F.R. § 241.4(e)-(f).

73. By contrast, the procedure Petitioner seeks—release from custody until he is provided a hearing in front of an Immigration Judge at which the government must show that his detention will not be indefinite, or otherwise that the circumstances have changed since his release in 2017 to justify his detention—is much more likely to produce accurate determinations regarding these factual disputes. *See Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (9th Cir.1989) (when "delicate judgments depending on credibility of witnesses and assessment of conditions not subject to measurement" are at issue, the "risk of error is considerable when just determinations are made after hearing only one side"). "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). The Ninth Circuit has noted that the risk of an erroneous deprivation of liberty under *Mathews* can be decreased where a neutral

decisionmaker, rather than ICE alone, makes custody determinations. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011).

74. Due process also requires consideration of alternatives to detention at any custody redetermination hearing that may occur. The primary purpose of immigration detention is to ensure removal *if* reasonably foreseeable. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if, as here, removal is not actually foreseeable. Accordingly, alternatives to detention must be considered in determining whether Petitioner's re-incarceration is warranted.

**Right to Constitutionally Adequate Procedures Prior to Third Country Removal**

75. Under the INA, Respondents have a clear and non-discretionary duty to execute final orders of removal only to the designated country of removal. The statute explicitly states that a noncitizen "*shall* remove the [noncitizen] to the country the [noncitizen] . . . designates." 8 U.S.C. § 1231(b)(2)(A)(ii) (emphasis added). And even where a noncitizen does not designate the country of removal, the statute further mandates that DHS "shall remove the alien to a country of which the alien is a subject, national, or citizen. *See id.* § 1231(b)(2)(D); *see also generally Jama v. ICE*, 543 U.S. 335, 341 (2005).

76. As the Supreme Court has explained, such language "generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive," *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007) (quoting *Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 22 F.3d 1150, 1153 (D.C. Cir. 1994)); *see also Black's Law Dictionary* (11th ed. 2019) ("Shall" means "[h]as a duty to; more broadly, is required to . . . . This is the mandatory sense that drafters typically intend and that courts typically uphold."); *United States v. Monsanto*, 491 U.S. 600, 607 (1989) (finding that "shall" language in a statute was unambiguously mandatory). Accordingly, any imminent third country removal fails to comport with the statutory obligations set forth by Congress in the INA and is unlawful.

77. Moreover, prior to any third country removal, ICE must provide Petitioner with sufficient notice and an opportunity to respond and apply for fear-based relief as to that country, in

compliance with the INA, due process, and the binding international treaty: The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.[10] Currently, DHS has a policy of removing or seeking to remove individuals to third countries without first providing constitutionally adequate notice of third country removal, or any meaningful opportunity to contest that removal if the individual has a fear of persecution or torture in that country. ZN Decl. at Exh. A (DHS Policy Regarding Third Country Removal). This policy clearly violates due process and the United States' obligations under the Convention Against Torture.

78. The U.S. District Court for the District of Massachusetts previously issued a nationwide preliminary injunction blocking such third country removals without notice and a meaningful opportunity to apply for relief under the Convention Against Torture, in recognition that the government's policy violates due process and the United States' obligations under the Convention Against Torture. *D.V.D., et al.* v. *U.S. Department of Homeland Security, et al. v.*, No. 25-10676-BEM (D. Mass. Apr. 18, 2025). The U.S. Supreme Court has since granted the government's motion to stay the injunction on June 23, 2025, just before the Court published *Trump v. Casa*, No. 24A884 (June 27, 2025) limiting nationwide injunctions. Thus, the Supreme Court's order, which is not accompanied by an opinion, signals only disagreement with nature, and not the substance, of the nationwide preliminary injunction.

79. Thus, if Mr. Krajekian were to be removed to any third country it would violate his due process rights unless he is first provided with constitutionally adequate notice and a meaningful opportunity to apply for protection under the Convention Against Torture. In the absence of any other injunction, intervention by this Court is necessary to protect those rights.

///

///

---

[10] *See supra* n.4.

### **FIRST CAUSE OF ACTION**

#### **Unlawful Re-Detention**

80. Petitioner re-alleges and incorporates herein by reference, as if set forth fully herein, the allegations in all the preceding paragraphs.

81. Petitioner was previously released by Respondents because he did not pose a danger or flight risk. If he complies with the conditions of his release, Respondents have authority to revoke release only if circumstances have changed. 8 C.F.R. § 241.13(i)(2); 8 C.F.R. § 1231(a)(6).

82. Respondents' actions are arbitrary, capricious, an abuse of discretion, and contrary to law. 5 U.S.C. § 706(a)(2)(A). The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest. *Young v. Harpe*r, 520 U.S. 143, 150 (1997); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1001 (N.D. Cal 2018) (Corley, J.). Just like people on pre-parole, parole, probation status, bail, or bond have a liberty interest, so too does Petitioner have a liberty interest in remaining out of custody on his Forms I-220B OSUP. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 2019 WL 6251231 (N.D. Cal. 2019). He should therefore be immediately released and in the future provided a full and fair hearing before an Immigration Judge where the government bears the burden of showing that circumstances have changed such that his removal is reasonably foreseeable, and otherwise evidence of his dangerousness and flight risk. *Id.*

### **SECOND CAUSE OF ACTION**

#### **Violation of Procedures for Revocation of Release**

83. Petitioner re-alleges and incorporates herein by reference, as if set forth fully herein, the allegations in all the preceding paragraphs.

84. Respondents must notify Petitioner of the reason for his detention. 8 C.F.R. § 241.13(i)(3). The regulations also require Respondents to afford Petitioner an initial interview promptly after his detention at which he can respond to the purported reasons for revocation. *Id.*

85. Respondents have not provided Petitioner with adequate and timely notice of the reasons for revocation. Respondents also have not timely provided Petitioner with an initial interview or an opportunity to respond.

### THIRD CAUSE OF ACTION

**Violation of the INA and Applicable Regulations**

86. Petitioner re-alleges and incorporates herein by reference, as if set forth fully herein, the allegations in all the preceding paragraphs.

87. The INA provides for detention during the ninety (90) day "removal period" that begins immediately after a noncitizen's order of removal becomes final. 8 U.S.C. § 1231(a)(1). After the ninety (90) day removal period, the INA and its applicable regulations provide that detaining noncitizens is generally permissible only upon notice to the noncitizen and after an individualized determination of dangerousness and flight risk. *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k).

88. Respondents are not permitted to detain Petitioner based on his prior order of removal and without any determination of whether circumstances have changed such that his removal is reasonably foreseeable, and a determination of his danger and flight risk, by an Immigration Judge. This is especially true where, as here, Petitioner received a determination from the agency issuing them Forms I-220B that permitting him to remain out of custody in the first place. 8 C.F.R. § 241.13(i)(2)-(3).

### FOURTH CAUSE OF ACTION

**Procedural Due Process – Unconstitutionally Indefinite Detention**

**U.S. Const. amend. V**

89. Petitioner re-alleges and incorporates herein by reference, as if set forth fully herein, the allegations in all the preceding paragraphs.

90. The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

91. Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances ... where a special

justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. 678, 690. Such special justification exists  only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Foucha v. Louisiana*, 504 U.S. 71, 79 (1992). In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

92. Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha*, 504 U.S. 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas*, 533 U.S. 692; *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court may assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring his appearance or protecting the community, *Zadvydas*, 533 U.S. at 699, or require release.

93. Under this framework, Petitioner's release is required because his re-detention violates his due process rights.

94. Further, Petitioner had a vested liberty interest in his release. Due Process does not permit the government to strip him of that liberty without a future hearing prior to any re-detention. *See Morrissey*, 408 U.S. at 487-488.

95. Because Petitioner's detention is unconstitutionally indefinite, it is unlawful. Moreover, because Petitioner faces detention without any meaningful determination of whether circumstances have changed such that his removal is reasonably foreseeable, and whether he poses a danger or flight risk, his detention violates due process.

96. Petitioner's re-detention is unconstitutionally indefinite because he cannot be removed to Syria. Thus, his removal is not reasonably foreseeable in this case, and the government has not provided him with notice, evidence, or an opportunity to be heard on this issue either before arbitrarily re-detaining him. His continued detention without any reasonably foreseeable end

point is thus unconstitutionally prolonged in violation of clear Supreme Court precedent. *Zadvydas v. Davis*, 533 U.S. at 701.

97. Moreover, because Petitioner poses no danger or flight risk, his detention was and is not reasonably related to its purposes, and is unlawful.

98. Further, because he was not provided with a hearing prior to his re-detention, and his continuing unlawful and constitutionally indefinite detention without adequate process is an ongoing violation of his due process rights, the only remedy of this violation is his immediate release from immigration detention, as well as a future hearing prior to any re-detention where DHS must prove that his detention is not unlawful.

## FIFTH CAUSE OF ACTION

### Procedural Due Process – Unconstitutionally Inadequate Procedures Regarding Third Country Removal

### U.S. Const. amend. V

99. Petitioner re-alleges and incorporates herein by reference, as if set forth fully herein, the allegations in all the preceding paragraphs.

100.     The Due Process Clause of the Fifth Amendment requires sufficient notice and an opportunity to be heard prior to the deprivation of any protected rights. U.S. Const. amend. V; *see also Louisiana Pacific Corp. v. Beazer Materials & Services, Inc.*, 842 F.Supp. 1243, 1252 (E.D. Cal. 1994) ("[D]ue process requires that government action falling within the clause's mandate may only be taken where there is notice and an opportunity for hearing.").

101.     Petitioner has a protected interest in his life. Thus, prior to any third country removal, Petitioner must be provided with constitutionally compliant notice and an opportunity to respond and contest that removal if he has a fear of persecution or torture in that country.

102.     For these reasons, Petitioner's removal to any third country without adequate notice and an opportunity to apply for relief under the Convention Against Torture would violate his due process rights. The only remedy for this violation is for this Court to order that he not be summarily removed to any third country unless and until he is provided with constitutionally adequate procedures.

**PRAYER FOR RELIEF**

WHEREFORE, the Petitioner prays that this Court grant the following relief:

    (1) Assume jurisdiction over this matter;

    (2) Order that Petitioner's detention is unlawful in violation of *Zadvydas* because his removal is not reasonably foreseeable;

    (3) Order that Petitioner's detention is unlawful in violation of 8 C.F.R. § 241.13(i)(2) because there are no changed circumstances showing that there is a significant likelihood that he may be removed in the reasonably foreseeable future;

    (4) Order the immediate release of Petitioner from custody because his detention is not reasonably foreseeable in violation of *Zadvydas*;

    (5) Order the immediate release of Petitioner from custody because his detention is unlawful in violation of 8 C.F.R. § 241.13(i)(2);

    (6) Order the immediate release of Petitioner from custody on any other basis that this Court finds proper;

    (7) Order that, prior to any future re-detention, Petitioner is provided a hearing before an Immigration Judge where DHS bears the burden of justifying Petitioner's re-detention, and that the Immigration Judge must further consider whether, in lieu of detention, alternatives to detention exist to mitigate any risk that DHS may establish;

    (8) Order that Petitioner cannot be removed to any third country without first being provided constitutionally-compliant procedures, including:

        a.  Written notice to Petitioner and counsel of the third country to which he may be removed, in a language that Petitioner can understand, provided at least 21 days before any such removal;

        b.  A meaningful opportunity for Petitioner to raise a fear of return for eligibility for protection under the Convention Against Torture, including a reasonable fear interview before a DHS officer;

c. If Petitioner demonstrates a reasonable fear during the interview, DHS must move to reopen his underlying removal proceedings so that he may apply for relief under the Convention Against Torture;

d. If it is found that Petitioner does not demonstrate a reasonable fear during the interview, a meaningful opportunity, and a minimum of 15 days, for Petitioner to seek to move to reopen his underlying removal proceedings to challenge potential third-country removal;

(9) Award Petitioner reasonable costs and attorney fees; and

(10)      Grant such further relief as the Court deems just and proper.

Dated: July 28, 2025

Respectfully submitted,

s/ Jesse Evans-Schroeder

Jesse Evans-Schroeder
Attorney for Petitioner

## **VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Amended Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on this 28th day of July, 2025 in Tucson, Arizona.

*/s/ Jesse Evans-Schroeder*
Jesse Evans-Schroeder
Attorney for Petitioner

# <u>TABLE OF EXHIBITS</u>

| Exhibit A | Affidavit of Jesse Evans-Schroeder, dated July 28, 2025 |
| Exhibit B | Transcript of Removal Proceedings, October 3, 2017 |
| Exhibit C | Order of Supervision, dated December 29, 2017 |
| Exhibit D | Petitioner's Declaration, dated July 24, 2025 |
| Exhibit E | Instruction Sheet to Detainee Regarding Requirement to Assist in Removal, signed May 7, 2025 |

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garbis KRAJEKIAN, | Case No. _____ |
| Plaintiff, | **DECLARATION OF JESSE EVANS-SCHROEDER** |
| v. | |
| John CANTU, Field Office Director of Phoenix Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; | |
| Todd LYONS Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; | |
| Kristi NOEM, in her Official Capacity, Secretary, U.S. Department of Homeland Security; | |
| Pam BONDI, in her Official Capacity, Attorney General of the United States; | |
| Fred FIGUEROA, Warden at Eloy Detention Center, Eloy, Arizona | |
| Defendants. | |

1. My name is Jesse Evans-Schroeder.

2. My date of birth is May 20, 1975.

3. I am an attorney, licensed by the Supreme Court of Arizona, and authorized to practice law in the State of Arizona, the U.S. District Court for the District of Arizona, and the U.S. Court of Appeals for the Ninth Circuit.

4. My residence and principal place of business are in Tucson, Arizona.

5. I am the attorney of record for Plaintiff, Garbis Krajekian, in the above-referenced case.

Declaration of Jesse Evans-Schroeder

6. On July 28, 2025, I notified Ms. Katherine Branch, Esq., Civil Chief, U.S. Attorney's Office, District of Arizona, via electronic mail, of the fact that I intended to file Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. I also provided Ms. Branch with a copy of the motion.

7. Rule 65(b)(1), Fed.R.Civ.P. states that a temporary restraining order may issue without written or oral notice to the adverse party, but only if (a) specific facts in an affidavit clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (b) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

8. For the reasons set forth at pages 13-15 of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, I certify that appropriate efforts have been made to give notice to Defendants of Plaintiff's application for a Temporary Restraining Order.

I declare under penalty of perjury that the foregoing is true and correct. (U.S. Code, Title 28, USC § 1746.)

July 28, 2025
Dated

/s/Jesse Evans-Schroeder
Jesse Evans-Schroeder
AZSB No. 027434
Green Evans-Schroeder
130 W. Cushing Street
Tucson, AZ 85701
Tel: (520) 639-7277

Declaration of Jesse Evans-Schroeder

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
DALLAS, TEXAS


IN THE MATTER OF:            )
                            )      No. 098-252-688
                            )
GARBIS ARAM KRAJEKIAN,       )
Respondent                  )
                            )
In Removal Proceedings.      )
_____)


MASTER CALENDAR HEARING

OCTOBER 3, 2017



BEFORE THE HONORABLE JAMES A. NUGENT
UNITED STATES IMMIGRATION JUDGE
_____


APPEARANCES:

MARGARET PRICE, ESQ.
U.S. DEPARTMENT OF HOMELAND SECURITY
APPEARING ON BEHALF OF THE DEPARTMENT

GARBIS ARAM KRAJEKIAN
APPEARING IN PRO PER

ALSO PRESENT:

MS. CASTILLO
CERTIFIED COURT INTERPRETER
SPANISH INTERPRETER

<u>In the Matter of:  Garbis Aram Krajekian</u>, 098-252-688
Master Calendar Hearing, 10/3/2017

---

1          **PROCEEDINGS**:

2

3          THE COURT:  This is the Immigration Court, Dallas,

4    Texas, sitting docket in Prairieland.  Immigration Judge James A.

5    Nugent presiding.  Today's date, Tuesday, October 3rd, 2017.  We

6    are here for Initial Master Calendar in the following cases:

7    070-108-973, Michaela Pollich; 216-121-963, Adrian Castillo; 216-

8    121-948, Abera (ph.) Alvarado; 216-121-797, Gustavo Valerio; 204-

9    293-733, Angel Cruz; 202-088-721, Maria Andrade; 098-252-688,

10   Garbis Krajekian.  Sir, do you speak English?

11          THE RESPONDENT:  Yes, sir.

12          THE COURT:  Thank you.

13          THE RESPONDENT:  Yes, Your Honor.

14          THE COURT:  Thank you.  024-457-687, Gilberto

15   Bory; 046- -- 046-058-594, Merny Lopez; 216-311-265, Jonathan

16   Gomez.

17          All Respondents are present by video from Prairieland.

18   The Department of Homeland is represented this morning by

19   Margaret Price, Esq.  Our Spanish interpreter today, Ms.

20   Castillo, is previously sworn.

21          Good morning again to everyone.  As I told you, I'm

22   going to explain your rights to you.  After that, I'm going to

23   speak to each of you individually about your case.  This is the

24   beginning of your removal proceeding.  This is known as the

25   Master Calendar Hearing.  This proceeding began when the

In the Matter of:  Garbis Aram Krajekian, 098-252-688
Master Calendar Hearing, 10/3/2017

_____

1    Department of Homeland Security served a copy of your Notice to

2    Appear on this Court.  You've all seen this document and we'll be

3    discussing it shortly.  In that document, the Government made

4    certain allegations of fact and law against you.  It alleged you

5    are not a citizen or a national of the United States and that you

6    have violated the immigration laws of this country.  Based on

7    those allegations, the Government seeks to have you removed from

8    the United States.  The purpose of this hearing is for me to

9    determine whether the facts and allegations in the Notice to

10   Appear are true and correct.

11          You have rights in this proceeding and I want to

12   explain them to you now.  First, you have the right to be

13   represented by an attorney.  The Government does not pay for or

14   provide you with an attorney, but you do have the right to be

15   represented.  You have been provided with a list of attorneys in

16   this area.  These attorneys may represent you at little or no

17   cost to you.  If you want an attorney, it's up to you to get one.

18   This court does not appoint attorneys; however, you are not

19   limited to the attorneys on any list you have been provided.  You

20   have the right to an attorney of your choice.  When I speak to

21   you individually, I will ask if you wish to postpone today's

22   hearing so you may speak with an attorney.  If you wish to

23   postpone today's hearing for that, or any other reason, please

24   let me know when I ask.  Let me be clear, whether we proceed

25   today or not is up to you.

1    When we do proceed, you'll have the right to admit or

2   deny the allegations in the Notice to Appear.  You'll have the

3   right to admit or deny whether you violated the immigration laws

4   of this country.  You'll have the right to place evidence into

5   the record of your case; that evidence can take the form of

6   papers or documents.  You can also testify on your own behalf and

7   call witnesses.

8    Here in Dallas, the Government is represented by an

9   attorney.  The Government has the same rights you do in this

10  proceeding.  The Government has the right to place evidence into

11  the record of your case.  You have the right to review that

12  evidence.  If you object to that evidence, I would decide whether

13  or not it becomes a part of your record.  The Government can also

14  question you and call witnesses.  If the Government calls a

15  witness, you or your attorney may question that witness.  If a

16  witness is called on your behalf, the Government may question

17  that witness.

18   You will also have the right to tell me to which

19  country you would like to be removed if that becomes necessary.

20  I would ask you about that at the appropriate time.  If the Court

21  finds you're subject to removal, we'll determine if there's any

22  relief available for you.  If any relief is available, we'll

23  discuss it, and I'll give you an opportunity to apply for it.

24   At the end of your case, I'll make a decision.  You'll

25  have the right to accept my decision or tell me you wish to

1  appeal it to a higher authority.  If you accept my decision, it

2  becomes final and the case is over.  Accepting my decision also

3  means you do not wish to appeal it.  If you do wish to appeal,

4  we'll tell you how to do that.  We'll give you all the necessary

5  forms, tell you where to send them and when they would be due.

6  You'll also be given additional information relating to your

7  rights on appeal.

8           Ladies and gentlemen, those are your rights in this

9  proceeding.  In a few moments, I'll begin speaking to you

10  individually.  At this time, I ask you all to stand and raise

11  your right hand.

12           Do you swear your testimony will be the truth, whole

13  truth, and nothing but the truth so help you God?  Please

14  respond.

15           (Respondents respond in the affirmative.)

16           Thank you all.  Please be seated.  Let the record

17  reflect all Respondents have been sworn.

18           (Break in the audio.)

19           THE COURT:  098-252-688, Garbis Krajekian.  Good

20  morning, sir.  You were present earlier when I explained your

21  rights; is that correct?

22           THE RESPONDENT:  Yes, Your Honor.

23           THE COURT:  Did you understand your rights, sir?

24           THE RESPONDENT:  Yes, I did.

25           THE COURT:  Would you like to take some time to

In the Matter of:  Garbis Aram Krajekian, 098-252-688
Master Calendar Hearing, 10/3/2017

_____

1   speak with an attorney or go forward with your hearing now?

2           THE RESPONDENT:  Go forward with the hearing now,

3   please.

4           THE COURT:  Thank you, sir.  What family do you

5   have in this country?

6           THE RESPONDENT:  I have my wife, two children, a

7   brother and his family, a sister and her family.

8           THE COURT:  All right, sir.  When did you get

9   married?

10          THE RESPONDENT:  November 3, 2002.

11          THE COURT:  And what's your wife's immigration

12  status, sir?

13          THE RESPONDENT:  She's a U.S. citizen,

14  naturalized.

15          THE COURT:  All right.  How many children, sir?

16          THE RESPONDENT:  Two, a boy and a girl.

17          THE COURT:  How old are your children, sir?

18          THE RESPONDENT:  My daughter is ten; and my son is

19  five.

20          THE COURT:  They're both born in this country,

21  sir?

22          THE RESPONDENT:  Yes, Your Honor.

23          THE COURT:  So, you were given your Notice to

24  Appear; is that your signature on the document?

25          THE RESPONDENT:  Yes, it is, Your Honor.

6

1    THE COURT: Very well. Notice to Appear now

2    admitted as Exhibit 1.

3    Sir, are you a citizen or national of the United

4    States?

5    THE RESPONDENT: No.

6    THE COURT: Native and citizen of Syria?

7    THE RESPONDENT: Yes.

8    THE COURT: You were admitted on a student visa in

9    1994; became a legal resident in 2008; is that correct?

10    THE RESPONDENT: Yes, Your Honor.

11    THE COURT: And, in 2015, you were convicted in

12    the Federal Court in Arizona for uttering counterfeit obligations

13    or securities; is that correct, sir?

14    THE RESPONDENT: Yes, Your Honor.

15    THE COURT: Okay. I-213 and conviction documents

16    are admitted as Exhibit 2, having been served on Respondent.

17    Sir, you are subject to removal. To which country

18    would you like to be removed?

19    THE RESPONDENT: Switzerland.

20    THE COURT: Do you have any status in Switzerland,

21    sir?

22    THE RESPONDENT: No, Your Honor.

23    THE COURT: Sir, I can write Switzerland and then

24    put -- but I have to put Syria as the alternative; and so the

25    Government would then spend some time trying to get you to

7

1    Switzerland and then go -- and then try to get you to Syria.

2              THE RESPONDENT:  Well, my understanding is the

3    Government's not deporting anyone to Syria right not; that's

4    according to ICE Officer Nagles.

5              THE COURT:  Mm-hmm.  I've heard that.

6              THE RESPONDENT:  So, you're -- okay.  So, do you

7    want me to say that I want to be removed to Syria?  I don't --

8              THE COURT:  I want -- I want you to say what you

9    want to say.  I don't want you to say anything.  I'm not going to

10   make you say anything.

11             THE RESPONDENT:  Right.  Right.  Well, I'm saying

12   I would like to go to Switzerland if I can't stay here; if that's

13   okay.

14             THE COURT:  Okay.  Then on the order I will put

15   Switzerland, with Syria in the alternative.

16             THE RESPONDENT:  If that's what you want to do.  I

17   can't stop you, Your Honor.  I mean --

18             THE COURT:  Well, it's not a matter of what I --

19             THE RESPONDENT:  -- I cannot force --

20             THE COURT:  -- want to do, it's -- it's the way we

21   do things.

22             THE RESPONDENT:  Okay.  No problem, Your Honor.

23             THE COURT:  Okay.  Okay.  Sir, do you accept the

24   order and waive your right to appeal?

25             THE RESPONDENT:  Yes -- well, I mean, I think -- I

1  don't know if this is the way the process goes, Your Honor.

2  You're telling to appeal, you haven't even -- we haven't even

3  gone through the process of you -- I conceded the charges, right?

4  That's --

5           THE COURT:  Yeah.

6           THE RESPONDENT:  -- that's what we went through --

7  already went through that?

8           THE COURT:  Yes.  And you designated -- and I said

9  you were subject to removal and you designed Switzerland.

10          THE RESPONDENT:  Yes.  And are you going to advise

11 me whether I'm eligible for relief or not?

12          THE COURT:  Well, what relief do you think you're

13 avail- -- is available to you?

14          THE RESPONDENT:  I believe I'm eligible -- to

15 withholding and deferral of removal.

16          THE COURT:  Well, you designated Switzerland.

17          THE RESPONDENT:  Well, Your Honor, I'm following

18 your cues and I --

19          THE COURT:  Sir, I'm not going to argue with you.

20 What do you want to do?

21          THE RESPONDENT:  I'm not -- okay.  Well, here's

22 the situation, Your Honor:  First, if you can clarify a couple

23 points, I think that'll be easier to proceed that way.

24          THE COURT:  Fine.

25          THE RESPONDENT:  If granted withholding of

9

_____

1   removal, is there any permanent pathway to (unintelligible) here,

2   or there's no options at all?

3                    THE COURT:  No.

4                    THE RESPONDENT:  And deferral -- okay, and

5   deferral of removal is also a dead end, correct?  The same thing

6   going --

7                    THE COURT:  If it -- if you're not successful,

8   yes.  In fact, the Government would hold you to try to find a

9   different country that would take you.

10                    THE RESPONDENT:  Okay.  So, either way, there is

11   no permanent solution to remain in the United States, correct?

12                    THE COURT:  Not under withholding or CAT, no, sir.

13                    THE RESPONDENT:  Okay.  If that's the case, then I

14   do not want to apply for relief and I do concede the charges.

15   And, if you want to order me deported, Your Honor, you can close

16   the case.

17                    THE COURT:  Okay.  So, you are accepting my order?

18                    THE RESPONDENT:  Yes, Your Honor.

19                    THE COURT:  And you're waiving your right to

20   appeal?

21                    THE RESPONDENT:  I do not want to appeal.

22                    THE COURT:  Very well.

23                    THE RESPONDENT:  Yes, sir.

24                    THE COURT:  Okay.  You understand that that makes

25   my order final right now?

In the Matter of:  Garbis Aram Krajekian, 098-252-688
Master Calendar Hearing, 10/3/2017

_____

1          THE RESPONDENT:  Yes, I understand, Your Honor.

2          THE COURT:  Thank you.  All right, sir.  You'll

3   get a copy of the order shortly.  Good luck to you.

4          THE RESPONDENT:  Thank you, Your Honor.  Have a

5   good day.

6          (Conclusion of the proceedings.)

7                         *  *  *  *  *

In the Matter of:  Garbis Aram Krajekian, 098-252-688
Master Calendar Hearing, 10/3/2017

---

1

### **CERTIFICATE**

2          I hereby certify that, to the best of my ability, the

3  foregoing is a true and accurate transcription of the digitally-

4  recorded Master Calendar Hearing held on October 3, 2017, in the

5  matter referenced above.

6  Transcription completed:  July 25, 2025.

7  /s/ Danielle L. Krassow
8  DANIELLE L. KRASSOW
9  Legal Transcriptionist

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## ORDER OF SUPERVISION

File No.: 098 252 688

Date: December 29, 2017

Name: KRAJEKIAN, GARBIS ARAM

On October 3, 2017        , you were ordered:
(Date of Final Order)

☐ Excluded or deported pursuant to proceedings commenced prior to April 1, 1997.

☒ Removed pursuant to proceedings commenced on or after April 1, 1997.

Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions:

☒ That you appear in person at the time and place specified, upon each and every request of the agency, for identification and for deportation or removal.

☒ That upon request of the agency, you appear for medical or psychiatric examination at the expense of the United States Government.

☒ That you provide information under oath about your nationality, circumstances, habits, associations and activities and such other information as the agency considers appropriate.

☒ That you do not travel outside   Arizona                    for more than 48 hours without first having notified this
(Specify geographic limits, if any)
agency office of the dates and places, and obtaining approval from this agency office of such proposed travel.

☒ That you furnish written notice to this agency office of any change of residence or employment 48 hours prior to  such change.

☒ That you report in person on   01/10/2018 at 10:00am   to this agency office at:
(Day/Date/Time)

2035 N. Central Ave., Phoenix, AZ 85004
(Reporting Address)

☒ That you assist U.S. Immigration and Customs Enforcement in obtaining any necessary travel documents.

☐ Other: _____

☐ See attached sheet containing other specified conditions (Continue on separate sheet if required)

_____          SDDO Flores, Dallas Field Office
(Signature of ICE Official)                      (Print Name and Title of ICE Official)

### Alien's Acknowledgement of Conditions of Release under an Order of Supervision

I hereby acknowledge that I have (read) (had interpreted and explained to me in the         English         language) the contents of this order, a copy of which has been given to me.  I understand that failure to comply with the terms of this order may subject me to a fine, detention, or prosecution.

_____     _____     12/29/2017
(Signature of ICE Official Serving Order)          (Signature of Alien)              Date

ICE Form I-220B (10/15)                                      Page 1 of 4

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

### ORDER OF SUPERVISION (Continuation Page)

| Alien Name | | Picture | Right Index Print |
|---|---|---|---|
| | KRAJEKIAN, GARBIS ARAM | | |
| File Number | 098 252 688 | | |
| Date | December 29, 2017 | | |
| Alien's Signature ✗ | | | |
| Alien's Telephone Number (if applicable) | 4806640806 | | |
| Alien's Address 3772 S Hudson Pl Chandler ARIZONA, 85286 | | | |

**PERSONAL REPORT RECORD**

| Date | Officer | Comment/Changes |
|---|---|---|
| 1/10/2018 | Geldel41 | Next Report Date: April 11, 2018 @ 9 AM |
| 4/11/2018 | NORDSTROM | NRD September 26, 2018   0900-1100 |
| SEP 2 6 2018 | JOA | NRD   April 16, 2019   at 9am |
| 4/16/19 | DOS | next Report date Nov 5, 2019 @ 9am |
| 11-5-19 | DOS | NRD November 4, 2020 @ 9am |
| 8-30-21 | | ERA 1   6/9/21 @ 9:00 am |
| 9/9/21 | DOS | TRD 1/11/2022 @ 9am |
| 1/11/2022 | GUTZBERG | NRD 7/13/2022 @ 830 AM |
| 7-13-22 | DO1 | NR1 January 11, 2023 @ 830 AM |
| JAN 1 1 2023 | DOS | NRD July 11, 2023 @ 9 AM |
| JUL 1 1 2023 | DOS | NRD December 13, 2023 9 AM |
| DEC 1 3 2023 | DOS | Enrolled in CART |
| JAN 0 3 2025 | DO 8 | NRD July 10, 2025 @ 9 am. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| Signature | Title |
|---|---|
| NAGEL S | DO |

ICE Form I-220B (10/15)

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

**ORDER OF SUPERVISION (Addendum)**

File No.: 098 252 688

Date: December 29, 2017

Name: KRAJEKIAN, GARBIS ARAM

[x] That you do not associate with know gang members, criminal associates, or be associated with any such activity.

[ ] That you register in a substance abuse program within 14 days and provide ICE with written proof of such within 30 days. The proof must include the name, address, duration, and objectives of the program as well as the name of a counselor.

[ ] That you register in a sexual deviancy counseling program within 14 days and provide ICE with written proof of such within 30 days. You must provide ICE with the name of the program, the address of the program, duration and objectives of the program as well as the name of a counselor.

[ ] That you register as a sex offender, if applicable, within 7 days of being released, with the appropriate agency(s) and provide ICE with written proof of such within 10 days.

[x] That you do not commit any crimes while on this Order of Supervision.

[x] That you report to any parole or probation officer as required within 5 business days and provide ICE with written verification of the officer's name, address, telephone number, and reporting requirements.

[x] That you continue to follow any prescribed doctor's orders whether medical or psychological including taking prescribed medication.

[x] That you provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document.

[x] That you provide ICE with written responses from the Embassy or Consulate regarding your request.

[x] Any violation of the above conditions will result in revocation of your employment authorization document.

[x] Any violation of these conditions may result in you being taken into Service custody and you being criminally prosecuted.

[ ] Other:

x X _____
Alien's Signature

ICE Form I-220B (10/15)

Page 3 of 4

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## IMPLEMENTATION OF TERMS OF SUPERVISION

**Name:** Garbis Kraiekian
**CR#:** 14-01245

In accordance with the TERMS AND CONDITIONS OF SUPERVISED RELEASE. These rules are in effect immediately. They remain in effect until changed by your probation officer in writing.

**STANDARD CONDITION# 2:** You are hereby directed by the Probation Officer to:
Report in person to the below office each month between the hours of 9:00a.m. and 11:30a.m. or 1:15p.m. and 4:00p.m. If you cannot make your scheduled visit, please make other arrangements PRIOR to your scheduled visit. Witten or online report must be completed monthly. *Begining Feb 2018*
*2/21*

☐ Second Wednesday at 971 Jason Lopez Circle, Florence, AZ. ( 2nd floor of the Courthouse)
☒ Third Wednesday at 820 E. Cottonwood Lane, BLDG F1, Casa Grande, AZ.

**STANDARD CONDITION # 3:** Regarding requests for travel:
All requests to travel outside the district of Arizona, must be submitted 10 business days prior to travel to be considered. Any travel outside the united states, must be submitted 60 days prior and will require court approval.

**SPECIAL CONDITION TERM # 2** You are hereby directed by the Probation Officer to:
You shall provide a copy of your taxes and recent credit report by April 30th each year while on supervision. You shall also provide you most recent pay stub each month either in person or online.

**SPECIAL CONDITION TERM: # 1**

You shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

---

I have read, understand and had these terms explained to me. I agree to obey them. If I do not obey them, I can be returned to Court, detained, or have additional terms added.

_1-9-18_
Date

_1-2-18_
Date                    Witness Signature – Optional

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Garbis KRAJEKIAN,

    Plaintiff,

    v.

John CANTU, Field Office Director of
Phoenix Office of Detention and Removal,
U.S. Immigrations and Customs Enforcement;
U.S. Department of Homeland Security;

Todd LYONS Acting Director, Immigration
and Customs Enforcement, U.S. Department
of Homeland Security;

Kristi NOEM, in her Official Capacity,
Secretary, U.S. Department of Homeland
Security; and

Pam BONDI, in her Official Capacity,
Attorney General of the United States;

Fred FIGUEROA, Warden at Eloy Detention
Center, Eloy, Arizona

    Respondents-Defendants.

Case No.

_____

**DECLARATION OF
GARBIS KRAJEKIAN**

1

1. My name is Garbis Krajekian.

2. I am the Petitioner in connection with my petition for writ of habeas corpus and complaint for declaratory and injunctive relief and my motion for an ex-parte temporary restraining order.

3. I am a citizen of Syria.

4. I was placed in Immigration and Customs Enforcement (I.C.E.) custody at some time in September of 2017, for removal proceedings.

5. I was ordered removed by a U.S. immigration judge on or about October 3, 2017, in an immigration court in Los Fresnos, Texas.

6. On or about December 29, 2017, I was released from I.C.E. custody because they could not effectuate my removal to Syria, or the alternate country I designated-Switzerland.

7. At the time of my release, I had been detained for approximately ninety (90) days.

8. On my release, I was placed on an Order of Supervision, with instructions to report to I.C.E. in Phoenix on scheduled check in dates.

9. I attended all my scheduled check ins, from January of 2018 through January of 2025.

10. At my check in on January 3, 2025, I was asked to return for a regular check in on July 10, 2025.

11. On April 6, 2025, I was departing my home and was stopped by several individuals. I believe one of the individuals was identifiable as an I.C.E. agent.

2

12. I was detained on that date, and subsequently transferred to I.C.E. custody in Eloy, Arizona, where I remain today.

13. At the time of my detention on April 6, 2025, I was not advised of the reason for my detention.

14. Within a few weeks of arriving in the Eloy detention center, I was given a letter indicating that I would receive a "90 day review." Once I was detained for 90 days, I inquired about the status of this review and received a response that it was with "management." That was approximately two weeks ago. I have heard nothing since.

15. Also, when I was detained, I signed off on a request for travel documents that I was provided within the facility. I provided I.C.E. with the information I have regarding travel documents: that I do not have a Syrian passport, and do not have contacts in Syria to help me obtain one. I also provided a list of my family members in the U.S. and their contact information, so that I.C.E. could see if they could assist with obtaining travel documents. I also asked I.C.E. if they had any way to help me in obtaining such documents. I sent a message to I.C.E. on a tablet, reflecting these same statements. I received a one-word answer in response, "Understood."

16. I have not had any other messages or communications from I.C.E. regarding my custody status or efforts to obtain travel documents.

17. I have now been detained for over 180 days in I.C.E. custody with no information on whether they are attempting to secure travel documents for me, and no information on whether they have reviewed my custody status.

18. My wife and two minor children are suffering in my abrupt and extended absence. My wife has a full-time job in addition to trying to manage our landscaping business on her own. I was detained without notice right before my daughter's high school graduation. It has been costly, emotionally and

financially, for my wife to manage her employment, our business, our two children, and my detention during these last three months.

I declare under penalty of perjury that the foregoing statement is true and correct to the best of my own personal knowledge. Executed this 24th day of July, 2025 in Eloy, Arizona.

Dated: July 24 2025

Respectfully,

Garbis Krajekyan
Petitioner/Declarant

4

INSTRUCTION SHEET TO DETAINEE REGARDING REQUIREMENT TO
ASSIST IN REMOVAL

The following is a list of things you are required to complete within 30 days of receiving this
form, in order comply with your obligation to assist in obtaining a travel document:

*Mandatory requirements will be checked off by the ICE officer depending on the facts of each
case. Failure to comply or provide sufficient evidence of your inability to comply, may result in
the extension of the removal period and subject you to further detention. In addition, you may
be subject to criminal prosecution. If you need assistance in complying with any of the
requirements, please contact a Deportation Officer.*

- ☒ Submit passports (current and expired) to ICE. If you have a copy of your passport,
  you are to submit it.
- ☒ Apply for a travel document/passport from your embassy or consulate, or directly from
  your government in your native country, or any other embassy or consulate of your
  native country in another country.
- ☒ Comply with all instructions from all embassies or consulates requiring completion of
  documentation for issuance of a travel document.
- ☒ Submit to ICE birth certificates, national identification cards, and any other document
  issued by a foreign government indicating your citizenship, nationality, place of birth,
  and place of residence prior to entering the United States.
- ☒ Provide names and addresses of family and friends residing in the United States and
  request that they contact your embassy or consulate in the United States, in order to
  facilitate the issuance of a travel document.
- ☒ Provide names and addresses of family and friends residing in your country of
  citizenship and request family and friends residing abroad contact your government in
  reference to issuing a travel document.
- ☒ You are required to take measures to request reinstatement of your previous nationality,
  register as required, or take any other action that will ensure the issuance of a travel
  document and your removal from the United States.
- ☒ Provide ICE with written copies of requests to embassies or consulates requesting
  issuance of a travel document.
- ☒ Provide ICE with written copies of responses from embassies or consulates regarding
  your requests.
- ☒ Solicit permission from another country, which may be able to accept you, to enter that
  country to affect your removal from the United States.
- ☒ Provide your true and correct name and date of birth and any other identities you have
  ever used.
- ☐ Other: _____

Alien's Signature _____    A Number _098 252 588_

Served by _810216 POLI_____  on _May 7, 2025_____ at _____EAZ-T_____
          Officer's Name              Date                  Location

To be served with I-229 (a) no later than 30 days after the final order

(Rev. 04/18/12)

**UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA**

### Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

| | |
|---|---|
| **Plaintiff**(s):  **Garbis Krajekian , ;** | **Defendant**(s):  **John Cantu , Field Office Director of Phoenix Office of Detention and Removal, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; Todd Lyons , Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Kristi Noem , Secretary, U.S. Department of Homeland Security; Pam Bondi , Attorney General of the United States; Fred Figueroa , Warden at Eloy Detention Center, Eloy, Arizona;** |

County of Residence: Pinal

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

Plaintiff's Atty(s):

**Jesse Evans-Schroeder ,**
Green Evans-Schroeder, PLLC
130 W. Cushing Street
Tucson, Arizona  85701
5208828852

Defendant's Atty(s):

**Pam Bondi , Attorney General of the United States**

950 Pennsylvania Avenue, NW
Washington, D.C.,   20530
2025142000

**IFP REQUESTED**

**REMOVAL FROM COUNTY, CASE #**

<u>II. Basis of Jurisdiction</u>:    **2. U.S. Government Defendant**

<u>III. Citizenship of Principal Parties</u>**(Diversity Cases Only)**

Plaintiff:-    **N/A**

Defendant:-    **N/A**

<u>IV. Origin</u> :    **1. Original Proceeding**

<u>V. Nature of Suit</u>:    **463 Alien Detainee**

<u>VI.Cause of Action:</u>    **Petitioner challenges his re-detention in civil immigration custody and the Respondent's application of 8 U.S.C. § 1231; 8 C.F.R. § 241.4(l)(1)-(2) as proscribed by the Due Process Clause of the United States Constitution, as well as Respondent's application of 8 U.S.C. § 1231(b)(2)(C) and applications of provisions laid out under Article III of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, to which the U.S. is a signatory.**

<u>VII. Requested in Complaint</u>

Class Action:    **No**

Dollar Demand:

**No**

Jury Demand:

VIII. This case **is not related** to another case.

**Signature:** <u>Jesse Evans-Schroeder</u>

    **Date:** <u>July 28, 2025</u>

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.

Revised: 01/2014